## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

KARYN SCHOENBART,                                    CASE NO.
AVA EAGLE BROWN,
CHAITHANYA SOHAN,
CHAS ALLEN,
DAVID COLLIS,
HENRY EDWARDS,
JOAN RAMIREZ,
KELLY ROBBINS,
PAULA NEVA VAIL, and
YETUNDE HOFMANN,
all individuals,

              Plaintiffs,

vs.

TONY FERRARO, an individual,
AUTHORS' PLACE, LLC,
a North Carolina limited liability
company, MOTIVATIONAL PRESS,
INC., a Florida corporation, and
JUSTIN SACHS, an individual,

              Defendants.
_____/

## COMPLAINT

Plaintiffs Karyn Schoenbart, Ava Eagle Brown, Chaithanya Sohan, Chas Allen, David

Collis, Henry Edwards, Joan Ramirez, Kelly Robbins, Paula Neva Vail, and Yetunde Hofmann

(collectively, "***Plaintiffs***") file this complaint against defendants Tony Ferraro ("***Ferraro***"),

Authors' Place, LLC ("***Authors' Place***"), Motivational Press, Inc. ("***Motivational Press***"), and

Justin Sachs ("***Sachs***", and collectively "***Defendants***"), and state as follows:

## INTRODUCTION

This action is brought by a group of book authors against two predatory publishers.

Defendants Authors' Place and Motivational Press systematically failed to pay royalties to

authors and for years delayed providing royalty statements to their authors. Over the past several years, Plaintiffs demanded on numerous occasions unpaid royalties, royalty statements, and after reaching the limits of their frustration, a reversion of the publishing rights in their books.

Defendants Ferraro and Authors' Place, which is a successor-in-interest to defendant Motivational Press, at various times employed different tactics to stymie their authors. Sometimes they simply ignored the authors' requests. Other times, they refused the requests. Still other times, they threatened authors with the destruction of their works or the discontinuation of purported efforts to market the authors' works. Ferraro and Authors' Place also demanded arbitrary payments from the authors to maintain the status quo. When authors demanded a reversion of the publishing rights in their books, Ferraro and Authors' Place often demanded payment—even where they owed royalties to the authors. These amounts were arbitrary (and inconsistent) too.

Plaintiffs now bring this action to quiet title to the rights in their works and to seek an accounting of Authors' Place, to determine the amount of unpaid royalties that Plaintiffs are owed.

## **PARTIES, JURISDICTION AND VENUE**

1.      Plaintiffs are a collection of individual authors residing in various states within the United States.

2.      Motivational Press is a Florida for-profit corporation with its principal place of business in Melbourne, Florida.

3.      Justin Sachs is an individual who at all relevant times was listed as the registered agent and CEO of Motivational Press.

4.      Authors' Place, LLC is a Colorado corporation with its principal place of business in Wilmington, North Carolina.

5.      Tony Ferraro is an individual and, upon information and belief, is the sole member and manager of Authors' Place. Upon information and belief, Ferraro is a resident of Colorado.

6.      This is an action arising under the Copyright Act, 17 U.S.C. § 501.

7.      This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a), because Plaintiffs claims arise under the federal Copyright Act, 17 U.S.C. § 501, the Constitution, laws, or treaties of the United States.

8.      This Court has personal jurisdiction over all of the Defendants. Motivational Press is a Florida corporation and Sachs is its registered agent and CEO. Authors' Place acquired Motivational Press's assets, and is Motivational Press's successor-in-interest in the publishing rights that are the subject of this matter. These publishing rights were memorialized in contractual agreements that are governed by the laws of the State of Florida. Ferraro is the sole member and manager of Authors' Place.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), and 1400(a) because a substantial part of the events giving rise to the claims occurred in this district. The book publishing agreements that are at issue in this matter originally were executed in this district and Defendants subsequently engaged in infringement in this district. Defendant Motivational Press resides in this district and the other defendants are subject to personal jurisdiction in this district.

10.     All conditions precedent to the maintenance of this action have occurred or otherwise been waived or would be futile.

11.     Plaintiffs have retained undersigned counsel to represent them in this action and are required to pay counsel a reasonable fee for their services.

## FACTUAL ALLEGATIONS

### Karyn Schoenbart

12.     On July 5, 2017, plaintiff Karyn Schoenbart ("***Schoenbart***") signed a publishing agreement with defendant Motivational Press to publish Schoenbart's book, MOM.B.A. ("***Schoenbart's Publishing Agreement***"). A copy of Schoenbart's Publishing Agreement is attached as **Exhibit "A."**

13.     In or around March 2019, defendant Authors' Place notified various authors that defendant Authors' Place had acquired defendant Motivational Press's assets, presumably including the publishing rights in MOM.B.A. A copy of the communication from Authors' Place is attached as **Exhibit "B."**

14.     Schoenbart was not previously aware of, nor did she consent to, the transfer of publishing rights in MOM.B.A. to Authors' Place. Schoenbart never has signed any agreement directly with Authors' Place.

15.     On or around June 11, 2019, Schoenbart requested from Authors' Place a reversion of her rights in MOM.BA. Authors' Place refused.

16.     Per Section 13 of Schoenbart's Publishing Agreement, Schoenbart requested an audit of Authors' Place. Specifically, Schoenbart requested that an independent accountant conduct the audit as Schoenbart's designate. Ferraro and Authors' Place refused Schoenbart's request and said that Schoenbart would have to conduct the audit herself, but that Schoenbart's accountant would not be permitted to participate in the audit, even though it is standard industry practice for professional accountants and auditors to do so. Ferraro further informed Schoenbart

that if she were to perform an audit, Authors' Place would not revert Schoenbart's publishing rights back to her at all.

17.     Under the parties' contract, Schoenbart was within her rights to terminate the contract when Authors' Place breached Schoenbart's Publishing Agreement by failing to properly pay her royalties or to grant her an independent audit. Specifically, the contract states that:

> If the Publisher fails to render accountings or payments when due hereunder or commits any other material breach of this Agreement, including, but not limited, to any breach of Paragraph 5 of this Agreement, and if the Publisher fails to render such accountings or payments or to cure any such breach within 30 days after receipt of written notice by Author of such failure and/or breach, the Author may terminate this Agreement by giving written notice to the Publisher without waiving any of the rights it may have against the Publisher.

Exhibit A, Publishing Agreement, p. 9.

18.     At first, to placate Schoenbart, Authors' Place agreed to increase the royalty percentages that it would pay to Schoenbart. But Authors' Place later reneged, failing to pay Schoenbart the higher royalty rate. In July 2020, Authors' Place paid only $495.68 in royalties to Schoenbart for paperback and hard copy books that Authors' Place claims it sold through the third quarter of 2020. Authors' Place has not paid any royalties for paperback and hard copy books sold since 2020. And Authors' Place has never paid royalties on any online or e-book versions of MOM.B.A.

19.     Authors' Place owes to Schoenbart royalties for hardcopy and paperback books sold since 2020 and also for online and e-books that Authors' Place has sold at any time.

20.     In late 2022, after Schoenbart warned defendants Authors' Place and Ferraro that she would file this action, Ferraro and Authors' Place claimed to have terminated Schoenbart's Publishing Agreement. But the parties have not signed any document confirming the reversion of

Schoenbart's rights in MOM.B.A. Nor has Authors' Place paid any additional royalties or agreed to an independent, professional audit, to determine the true amount of royalties that Authors' Place owed to Schoenbart.

The Other Plaintiffs-Authors

21.     Like plaintiff Schoenbart, the other named Plaintiffs in this action also are authors who have published books (together, with MOMB.A., the Plaintiffs' "***Works***"). Like Schoenbart, the other Plaintiffs also entered into publishing agreements (together with Schoenbart's Publishing Agreement, the ***"Publishing Agreements"***) that purportedly were later transferred from Motivational Press to Authors' Place without Plaintiffs' knowledge or consent.

22.     Since Authors' Place stepped into Motivational Press's shoes as Plaintiffs' publisher, the other Plaintiffs have experienced challenges with Ferraro and Authors' Place similar to Schoenbart's.

23.     For years, Plaintiffs' requests for statements and back royalties have been ignored or denied. Occasionally, when Authors' Place and Ferraro have responded to an author's inquiry, they have claimed that Plaintiffs' Works have not sold many books, or that due to Ferraro's and Authors' Place's opaque and unilateral assessment of expenses, the net revenues from the sales of the Plaintiffs' books are extremely low (such that the royalties owed to Plaintiffs are *de minimis*). Often, Ferraro and Authors' Place have demanded additional, arbitrary payments from Plaintiffs to maintain the status quo or in exchange for publishing services that Ferraro and Authors' Place never delivered.

24.     Upon information and belief, Ferraro and Authors' Place have not performed under the Publishing Agreement, doing very little to expand distribution and sales of Plaintiffs' Works.

25.    Ferraro and Authors' Place have not paid all of the royalties that they owe to Plaintiffs, have delayed providing royalty statements, have provided inaccurate royalty statements, and have refused to allow the Plaintiffs to conduct a professional audit.

26.    When Plaintiffs requested a reversion of their rights in the past, Ferraro and Authors' Place have at one time or another refused, delayed, or demanded an arbitrary payment. Other times, they have threatened to destroy the text files, designs and artwork associated with the Plaintiffs' Works, to discourage Plaintiffs from pressing their rights. Most recently, after being warned that Plaintiffs intended to file this lawsuit, Ferraro and Authors' Place claimed to have terminated the Plaintiffs' Publishing Agreements, but the parties have not signed any formal agreement to revert back to the Plaintiffs the publishing rights in the Works that Motivational Press and Authors' Place claimed to have once held.

27.    Thus, Plaintiffs now seek an order expressly stating that Authors' Place has terminated each of the Publishing Agreements and reverted and assigned back to each of the Plaintiffs all of their rights in their respective Works and to quiet title to those rights, and also seek an independent accounting to determine the amount of unpaid royalties owed to them.

## COUNT I–COPYRIGHT INFRINGEMENT
### (Defendants Authors' Place and Tony Ferraro)

28.    Plaintiffs incorporate and reallege paragraphs 1-27.

29.    Plaintiffs are authors whose Works are books containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. Seq.

30.    Each Plaintiff owns a valid copyright in each of his or her work.

31.    Each Plaintiff entered into an agreement with defendant Motivational Press, whereby an exclusive license (*i.e.,* a limited assignment) of the Plaintiff's copyrights were transferred to Motivational Press for the purpose of publishing the Plaintiff's works.

32.    Defendants Ferraro and Authors' Place claim that, in January 2019, Authors' Place acquired the publishing rights to Plaintiffs' Works from Motivational Press.

33.    Plaintiffs did not know of, or consent to, the transfer of rights in their Works from Motivational Press to Authors' Place.

34.    Defendants have failed to pay royalties owed to the Plaintiffs and have only provided untimely and inaccurate royalty statements.

35.    Ferraro and Authors' Place also have failed to grant to Plaintiffs an independent professional audit.

36.    Authors' Place claims to have terminated its Publishing Agreement with Plaintiffs but has not signed any formal written document confirming that all of its previously held publishing rights have reverted back to Plaintiffs.

37.    Upon information and belief, defendant Authors' Place continued to claim licensing rights and to sell and distribute Plaintiffs' copyrighted material without authorization, even after they materially breached the Publishing Agreements.

38.    Defendants performed the acts alleged in the course and scope of their business activities.

39.    Defendants' infringing conduct alleged herein was willful and with full knowledge of Plaintiffs' rights in their copyrighted material. Defendants Motivational Press and Sachs entered into the Publishing Agreements, which clearly allow Plaintiffs to terminate the Publishing Agreements if there is a material breach.

40.    Defendants Authors' Place and Ferraro purported to step into Motivational Press's shoes, to assume the obligations and reap the benefits of the Publishing Agreements.

41.    Defendants' failure to pay to Plaintiffs royalties or to allow thorough audits clearly are material breaches of the Publishing Agreements. Therefore, Defendants were selling copyrighted material that they did not have a right to, infringing on the copyrights, and enabling Defendants to gain profit therefrom illegally.

42.    As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiffs have been harmed and are entitled to damages in an amount to be proven at trial.

43.    Pursuant to 17 U.S.C. § 504(b), Plaintiffs are also entitled to recovery of Defendants' profits attributable to Defendants' infringing conduct alleged herein, and an accounting of and a constructive trust with respect to such profits.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against the Defendants for all amounts due under the Copyright Act, plus pre- and post-judgment interest and attorneys' fees and costs, and for any other relief the Court deems just and proper.

## COUNT II–BREACH OF CONTRACT
### (All Defendants)

44.    Plaintiffs incorporate and reallege paragraphs 1-27.

45.    Plaintiffs allege this breach-of-contract claim in the alternative to the copyright infringement claim (Count I).

46.    Motivational Press entered into Publishing Agreements with each of the listed Plaintiffs. Authors' Place purports to have acquired the Publishing Agreements that the Plaintiffs made with Motivational Press.

47.    Plaintiffs performed all of their obligations under the Publishing Agreements.

48.    Motivational Press and Authors' Place (and their principals Sachs and Ferraro) breached the Publishing Agreements, including by failing to pay the amounts due under the Publishing Agreements.

49.    Further, Authors' Place did not allow a proper audit or accounting as contracted for when Plaintiff Schoenbart requested one.

50.    As a result, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand that the Court enter judgment against the Defendants for all amounts due under the Publishing Agreements, plus pre- and post-judgment interest and attorneys' fees and costs, and for any other relief the Court deems just and proper.

## COUNT III – EQUITABLE ACCOUNTING
### (Defendants Authors' Place and Motivational Press)

51.    Plaintiffs incorporate and reallege paragraphs 1-27.

52.    The Publishing Agreements' demands between the litigants involve extensive and complicated accounts.

53.    A remedy at law is not as full, adequate, and expeditious as it is in equity. Based on the threat of corporate mismanagement, Plaintiffs need an equitable proceeding to adjudicate their rights to the accounting sought.

54.    Principles of equity and fairness demand that Plaintiffs be awarded an accounting in this action.

WHEREFORE, Plaintiffs request that Motivational Press and Authors' Place provide them with an accounting of any and all financial information necessary to determine revenues, expenses, and profits of the companies, as well as royalties owed to Plaintiffs, as well as an award of attorneys' fees and costs, along with any other relief the Court deems just and proper.

## COUNT IV–UNJUST ENRICHMENT
### (All Defendants)

55.    Plaintiffs incorporate and reallege paragraphs 1-27.

56.    Plaintiffs conferred benefits on Motivational Press and Authors' Place, and indirectly to Ferraro and Sachs, in the form of certain publishing rights in Plaintiffs' Works.

57.    The benefits conferred on Defendants consisted of exclusive contracts to publish the Plaintiffs' Works and all of the financial rewards that come with those exclusive contracts.

58.    Defendants voluntarily accepted and retained the benefits conferred.

59.    Under the circumstances, it would be inequitable for Defendants to retain these benefits without paying Plaintiffs the value thereof.

60.    As a result, Plaintiffs have suffered damages. These damages include, but are not limited to, the royalties they have not been paid, the lawyers they have hired to negotiate with the Defendants, and other lost profits.

WHEREFORE, Plaintiffs demand that the Court enter judgment against the Defendants for all damages suffered, plus pre- and post-judgment interest and attorneys' fees and costs, and for any other relief the Court deems just and proper.

## COUNT V–DECLARATORY RELIEF
### (All Defendants)

61.    Plaintiffs incorporate and reallege paragraphs 1-27.

62.    There are actual, presently existing, substantial, continuing controversies between the Plaintiffs and Defendants that are not conjectural, hypothetical, or contingent.

63.    The parties dispute whether Defendants currently hold any rights to or in Plaintiffs' Works. Plaintiffs and Defendants have adverse interests, as they take opposite positions on this issue.

64.     Plaintiffs have suffered and are suffering actual and threatened injuries as a result of Defendants' incorrect legal position.

65.     Plaintiffs' actual or threatened injuries can be traced to Defendants' conduct.

66.     Plaintiffs' injuries can be redressed by the granting of the requested declaratory relief.

WHEREFORE, Plaintiffs request (a) a declaration that any and all rights that Defendants had and may have had in the Plaintiffs' Works have extinguished and/or reverted back to Plaintiffs, such that Defendants have no current or future rights in Plaintiffs' existing or future works; (b) attorneys' fees and costs; and (c) any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial of all issues so triable.

Dated: January 6, 2023.

> BY:   */s/Barry A. Kamar*
> Barry A. Kamar, Esq.
> Florida Bar Number: 1033842
> bkamar@melandbudwick.com
> Alina A. Nowicki, Esq.
> Florida Bar Number:1010500
> anowicki@melandbudwick.com
> MELAND BUDWICK, P.A.
> 3200 Southeast Financial Center
> 200 South Biscayne Boulevard
> Miami, FL 33131
> Telephone: (305) 358-6363
> Facsimile: (305) 358-1221
>
> *Attorneys for Plaintiffs*

TradPublishingAgreement 01182013

## Motivational Press Publishing Agreement

This PUBLISHING AGREEMENT **(Agreement)** between Motivational Press, Inc. with offices at 1777 Aurora Rd, Melbourne FL 32935 **(Publisher),** and SporkSquared, LLC (f/s/o Karyn Schoenbart ("KS"), 9 The Grasslands, Woodbury, NY 11797) (**"Author")** whose name and signature appear on this executed publishing agreement is effective as of the date of the Author's signature. WHEREAS the Publisher and the Author wish respectively to publish and to have published the work (the "Work") tentatively titled M(om)BA.  The Work shall consist of approximately 50,000 words in the English language. THEREFORE, they mutually agree as follows:

1.  License of Rights
      The Author hereby grants to the Publisher, for the full term of the copyright and any extensions and renewals thereof, the exclusive rights worldwide, to: print, publish, and sell the Work in print, verbatim electronic (eBook) and audio forms, and the exclusive rights to licensee the Work for publication and sale in Book Form in any translation throughout the world; and for publicity purposes, to publish (or permit others to publish) in print or on the Internet, or to broadcast (or permit others to broadcast), but not dramatize, by radio or television, without charge, such selections from the Work as, in the opinion of the Publisher, may benefit its sale. The Author hereby retains all rights not granted to the Publisher in this Agreement. However, the Author shall not exercise rights reserved by the Author, without reserving for the Publisher's benefit the rights expressly granted to the Publisher in this Agreement. In connection with the Author's disposition of first serial rights, if reserved by the Author, the Author shall secure the Publisher's consultation of the date of serial publication; and the Author shall not without the consent of the Publisher permit the publication in newspapers or periodicals of more than twenty percent (20%) of the Work, nor any condensation of the entire Work, and shall require any licensee of such rights to carry a credit to the publication of the Work by the Publisher. In connection with the Author's disposition of motion picture, television, radio, or live-stage dramatic adaptation rights, if any are reserved by the Author, the Author shall not make any grant of book publication rights without the Publisher's written approval and shall in no event make any grant of novelization, photo novel, comic book rights, or similar rights.

      a.  Subsidiary Rights
      The subsidiary rights to the Work granted to and administered by the Publisher, and the Author's share of proceeds received by the Publisher from the grants and administration of such rights to third parties, shall be as listed below. Before concluding any sales or licenses of the following rights, the Publisher shall consult with the Author. Upon request, the Publisher shall provide to the Author copies of any licenses granted by the Publisher.
      i.   Book Club Publication
      ii.  Non-Exclusive public reading rights, including the right to authorize readings of parts of the Work on radio or television (the Publisher may also grant such rights for publicity purposes without charge and without payment to the Author).

TradPublishingAgreement 01182013

2. Editorial Control

The final design and text of the Work, including any and all changes suggested or made by the Publisher's copyeditors, proofreaders, and indexers, must be approved in writing by the Author before publication.

If the editing of the manuscript of the Work by Publisher or its designee(s) is not satisfactory to the Author, in such event the Author shall have the right to terminate this Agreement by giving written notice to the Publisher, whereupon all rights granted to the Publisher under this Agreement shall revert to the Author, and neither party shall have any further obligation liability to the other party.

3. Copyright Notice

All copies of the Work that are distributed to the public will bear a copyright notice in the name of the Author as prescribed by the applicable copyright laws of the United States of America

4. Manuscript Submission

The Author will submit all Required Materials relating to the Work to the Publisher on or before September 30, 2017 before the Publisher will perform any editing or design work on the Title. Required Materials are:

- Signed and completed Motivational Press Publishing Agreement
- The final manuscript in a form editorially acceptable to the Publisher (including all changes and corrections). The Publisher agrees that it cannot reject the Work unless it is not editorially acceptable to the editor of the Work. In this connection, the Publisher may not consider changed economic circumstances or any other non-editorial factors. The Publisher shall notify the Author whether the Work is editorially satisfactory within 45 days of its receipt of the final manuscript for the Work. If the Publisher concludes that the Work is not editorially satisfactory, it will state in reasonable detail in writing the reason or reasons why the Work is not editorially satisfactory and suggestions for revisions to make the Work editorially satisfactory to the Publisher, and in such event the Author shall have a period of 120 days to deliver a revised manuscript for the Work that is editorially satisfactory to the Publisher. If the revised manuscript for the Work is still not editorially satisfactory to the Publisher, either the Author or the Publisher may terminate this Agreement by giving written notice to the other party, whereupon all rights granted to the Author pursuant to this Agreement shall revert to the Author and neither party shall have any obligation or liability to the other party.
- Any and all other materials supplied by, or agreed to be supplied by, the Author for inclusion in the Work.

Author may incur additional delays to the publication of the Work if the Work is not submitted in a format acceptable to the Publisher.

The Submission Date is the date the Publisher receives all Required Materials from the Author. Any changes or editorial revisions requested by the Author after the Submission Date will result in additional delays. The Author shall deliver to the Publisher one copy in manuscript

Page 2

Initials _____

Initials KS

TradPublishingAgreement 01182013

form and one copy via electronic submission (FTP, Email, or USB Drive are all acceptable forms of electronic submission) of the complete draft manuscript of the Work. The Author shall deliver to the Publisher by a mutually agreeable date, and at the Author's expense unless otherwise mutually agreed, all illustrations, maps, charts, and photographs which the Author and Publisher agree are required for the Work, as well as written permission for their use as part of the Work, if required by law.

The Author shall have the right to approve the cover design and/or jacket copy in a timely fashion.

In no event will the Publisher be obligated to publish a work, which in the reasonable opinion of its legal counsel violates the common law or statutory copyright, or the right of privacy of any person, or contains libelous or obscene material.

5.  Date of Publication
The Publisher will publish the Work within 90 to 270 days after the Submission Date. The Author acknowledges that author review periods totaling in excess of 20 days may delay the publication of the Work to more than 270 days after the Submission Date. The Author acknowledges that author alterations to the manuscript after the Submission Date may delay the publication of the Work to more than 270 days after the Submission Date. In either event the Publisher shall give the Author written notice of the date upon which it will publish the Work which shall in any event occur no later than 30 days after Publisher has received Author's final reviews and alterations. In no event will the Publisher be responsible for delays caused by circumstances beyond its control.

6.  Style of Publication
The Publisher will design the Work's interior layout and cover and will submit at least three cover designs to the Author for its approval. The Publisher may not publish the Work unless the Author has approved the final cover design of the Work with the Author. The Publisher will, however, retain final discretion over the style and formatting of the Work, including its interior layout. The Publisher will publish the Work in print under such imprint, as it deems suitable, unless an agreement specifying the imprint has been made in writing and is signed by the Publisher. The retail price of the printed Work will be based on its page count and format. The Publisher will retain final discretion over the retail price of the printed work.

7.  Editing and Proof – Subject to the provisions of Paragraph 2 of this Agreement:
a.  After the work has been accepted by the Publisher, no material change may be made with-out the Author's prior written agreement. The title of the Work shall be changed only by agreement between the Author and the Publisher.
b.  The Publisher may substantially edit, copy edit, and proof read the Work in accordance with its editors' professional judgment, as well as accepted standards of punctuation, spelling, capitalization, and usage. The Publisher agrees that it will have the entire Work copyedited by an experienced copy editor. The Publisher shall send each edited version of the manuscript to the Author, who shall make any revisions and corrections and return it within two (2) weeks of receipt.

Page 3

Initials _____

Initials _____

TradPublishingAgreement 01182013

c.  The Author shall review and promptly return within two (2) weeks of receipt proofs or other production materials submitted by the Publisher, along with a signed release form stating that the Author is in agreement with the final version of the manuscript ready for press. The Author shall pay all charges in excess of ten percent (10%) of the cost of composition changes (other than corrections of printers' errors or changes made at the Publisher's request) that the Author makes in the Work after type has been set in conformity with the proofread manuscript and all charges for changes requested by the Author in second or subsequent printings. These costs shall be charged to the Author's royalty account, except that the Author shall upon request pay directly such charges that are in excess of fifteen percent (15%) of the original cost of composition.

8.  Registrations
    The Publisher will:
    - Secure an International Standard Book Number (ISBN) for the printed Work.
    - Register the copyright in the Work in the United States Copyright Office within 90 days after its initial publication.

9.  Distribution
    For a period of at least three years after the date of first publication of the Work, the Publisher will make the printed work available for sale:
    - On major online bookstores including, but not limited to, Amazon and Apple.
    - On the Publisher's own online bookstore.
    - Through a wholesaler, Ingram Book Group and Baker & Taylor.
    - Through Barnes and Noble and other retail bookstore customers of the Publisher.
    - The Publisher shall use its best efforts to market, promote, publicize, transmit and distribute the Work.

    In no event will the Publisher be responsible for interruptions or delays in distribution caused by circumstances beyond its control.

10. No Guarantee of Minimum Sales
    The Publisher makes no promises that any of its products or services will result in the sales of a minimum number of copies of the Work. The Author acknowledges that the Publisher has no control over the purchasing decisions of book buyers and is not liable to any party if sales of the Work do not meet Author's expectations.

11. Royalty Payments
    Royalties due and owing shall be determined on the basis of the Publisher's paid invoices for the Work only, less only the following expenses [Cost of Printing _____] and a reasonable reserve for returns ("Receipts") from all sales, distribution and special channels.

    Royalties shall be computed under the following categories:
    1.  On the sale of the work in Book Form, the Publisher will pay the Author 40% (forty percent) based on the Net Receipts paid the Publisher.

Page 4

Initials _____

Initials KS

TradPublishingAgreement 01182013

2. On the sale of the electronic version of the book, the Publisher will pay the author 50% (fifty percent) based on the Net Receipts.

3. On the sale of the work in Audio Form, the Author will be paid 50% of all Net Receipts paid the publisher.

As used herein, "Net Receipts" shall mean amounts actually received by the Publisher from sales of the Work less expenses listed in the first subparagraph of this Paragraph 11 and a reasonable reserve for returns.

No Royalty Copies. No royalty will be paid on copies sold below or at cost, including expenses incurred; on copies sold directly to the Author by the Publisher; or on copies furnished gratis to the Author or for review, advertising sample, or like purposes.

The Publisher will make royalty payments and accountings on a calendar quarterly basis to the Author. If the royalty payment due in any one quarter is less than thirty U.S. dollars ($30), a payment may not be made, but an accounting shall be rendered, and the balance may be carried forward and added to the next quarter's royalty payment. The Publisher may retain a reasonable reserve against returns in any accounting period based on the Publisher's reasonable expectation of returns at the time the accounting is prepared, and hold such reserve for the following one (1) accounting period. The amount of any reserve shall be clearly indicated on the accounting for which a reserve is held and the subsequent accounting shall clearly indicate how such a reserve has been applied.

Share to Other Authors. If the Author has included the work of all others in the Work, the royalty payment made by the Publisher to the Author, pursuant to earlier sections of this paragraph, will not be increased and will include the royalties due such other authors. It is the responsibility of the Author to pay such other authors in accordance with the agreement between the Author and Alexandra Levit (the "Writer").

Should the Author receive an overpayment of royalty arising from copies reported sold but subsequently returned for any reason other than physical defect, the Publisher may deduct such overpayment from any future royalties due the Author.

12. Foreign Rights

Publisher will represent the Author to all foreign rights agents they are associated with in pursuing the sale of translation rights. The Author will be paid a royalty of 80% of the amount received by the Publisher on any sale of rights to any publisher that is licensed English language publishing rights outside of the United States and Canada and 75% of the amount received by Publisher on licenses of foreign language rights in the Work. The Publisher makes no guarantees that any foreign publisher will accept the title for publication.

13. Audit

The Author may upon reasonable written notice examine the Publisher's records relating to the Work during normal business hours under such conditions as the Publisher may reasonably prescribe. If an error is discovered as a result of any such examination, the party in whose favor the error was made shall promptly pay to the other the amount of the error. Any such

TradPublishingAgreement 01182013

examination shall be at the Author's expense unless errors of accounting shall be found in the Publisher's favor amounting to five percent (5%) or more of the total sum paid to the Author hereunder. In such event the Publisher shall, in addition to correcting the error, contribute to the cost of the examination up to the amount of the error determined thereby.

### 14. Revisions to the Work

Whenever the Publisher and the Author agree that a revised edition of the Work should be published, the Author shall prepare matter for a new edition of the Work and carry out the necessary revisions, or have the revisions done at its expense by a third party selected by the Publisher and the Author. If the Author is unwilling or unable to prepare such new matter, the Publisher will render the necessary revisions at the Publisher's expense, such expenses to be charged against the Author's future earnings.

### 15. Sample Copies for Author

The Author will receive ten free sample copies of the printed Work upon publication. The Publisher will ship these copies to the Author at the Publisher's own expense, using the shipping method of the Publisher's choice.

### 16. Author Discount

Author may purchase copies of the printed Work from the Publisher at a discounted rate of 55% off the retail price.

### 17. Publicity

The Publisher reserves the right to publish photographs and biographical information pre-approved by the Author regarding KS and the Writer or the Work for publicity purposes. The Author will allow the Publisher to distribute promotional copies of the book free of charge, as deemed necessary by the Publisher. The Author will receive no royalties for such copies. The Publisher will assign all marketing and promotion of the title to their preferred media relations partner, Expert Media Relations. Expert Media Relations will promote the book for a period of at least 90 days following the release of the Title. The Publisher will attach to this Agreement as Schedule A, a written marketing plan for the Work by Expert Media Relations that is satisfactory to the Author. All expenses thereof are to be incurred by the Publisher. Following this period, the Author will be given the opportunity to purchase additional public relations services from Expert Media Relations or any other publicist for media relations services at his/her own expense. Motivational Press' preferred vendor pricing shall be provided to the Author for such publicity services. Additional marketing promotions may include, but are not limited to email promotional campaigns, blog tours, or promotions to independent bookstores as deemed appropriate at the discretion of the Publisher.

### 18. Option

The Author shall submit to the Publisher the book-length non-fiction work next written by the Author after the Work described in this Agreement ("the Author's next book") before offering rights to the Author's next book to any other publisher. The Publisher shall have thirty (30) days to advise the Author whether it wishes to publish the Author's next book and upon what terms. If the Publisher does not advise the Author within thirty (30) days from such receipt that it wishes to publish the Author's next book, or if within such period the Publisher advises

TradPublishingAgreement 01182013

the Author that it wishes to publish the Author's next book but it is unable to within thirty (30) days of so advising the Author to reach an agreement with the Author as to the terms of such publication, the Author shall be free to submit the Author's next book elsewhere without any further obligations to the Publisher.

19. Author's Warranties and Indemnities

The Author represents and warrants to the Publisher:

- That it is the sole owner of the Work and of all the rights granted to the Publisher
- That it has not assigned, pledged, or otherwise encumbered the rights to that Work
- That it has full power to enter into this Agreement
- That it has a valid and subsisting collaboration agreement with Alexandra Levit to write the Work as a work made for hire
- That the Work and all rights therein are free of liens, claims, or interests of any kind.
- That the Work is entirely original except for portions thereof for which legally effective written licenses or permissions have been secured
- That the Work does not violate or infringe upon any personal or proprietary rights including without limitation privacy rights, contract rights, or publicity rights of any other persons or entities
- That the Work is not libelous or obscene
- That the Work does not infringe upon any statutory or common law copyright
- That any information contained in the Work is accurate or is based upon reasonable research for accuracy, and any recipe, formula, or instruction contained in the Work is not injurious to the reader.

If any claim, action, or proceeding based upon an alleged violation of any of these warranties is made (i) the Publisher will have the right to defend the same through counsel of its own choosing, (ii) no settlement will be effected without the prior written consent of the Author, which consent will not unreasonably be withheld and (iii) the Author will hold harmless the Publisher, any seller of the Work, and any licensee of a subsidiary right to the Work, against any damages finally sustained. If such claim, action, or proceeding is successfully defended or settled, the Author will indemnify the Publisher against the entire expense (including reasonable counsel fees) attributable to such defense or settlement. If any such claim, action or proceeding is instituted, the Publisher will promptly notify the Author, who will fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due the Author under this or any other agreement between the parties. These warranties and indemnities will survive the termination of this Agreement.

In the event of any third party claim against the Author, KS or the Writer arising out of or based upon the Publisher's or Expert Media Relations' advertising, marketing, promotion or distribution of the Work, except to the extent that such claim or legal proceeding arises from material included in the Work, the Author's indemnification obligation hereunder shall not apply, and the Publisher shall be solely responsible for any loss, cost and expense and shall defend through counsel of its own selection and indemnify the Author, KS and the Writer in connection therewith.

The Publisher agrees to add the Author, KS and the Writer as additional insureds in any media liability policy it has in effect.

Initials _____                                                                 Initials _K̸S̸_

TradPublishingAgreement 01182013

20. Permission for Copyrighted Material

If the Author incorporates in the Work any copyrighted material, it will procure, at its expense, written permission to reprint it. The Author agrees to retain all such written permissions. The Author agrees to deliver all such written permissions to the Publisher at the Publisher's request.

21. Suits for Infringement of Copyright

If the copyright of the Work is infringed and the parties (the Author and the Publisher) proceed jointly, the expenses and recoveries, if any, will be shared equally, and if they do not proceed jointly, either party will have the right to prosecute such action, and such party will bear expenses thereof, and any recoveries will belong to such party; and if such party will not hold the record title of the copyright, the other party hereby consents that the action be brought in his/her name.

22. Term of Agreement

This Agreement and the rights and licenses granted in the License of Rights paragraph above will extend indefinitely until terminated by either party. The Author has the right to terminate this agreement if the Publisher does not publish the work within the period described above for reasons other than first serial or book club use or delays in returning the copy edited manuscript or proofs or failure to comply with requests made by the Publisher's counsel or delays caused by circumstances beyond the Publisher's control, and if the Publisher at any time there after receives written notice from the Author demanding publication, the Publisher shall within ninety (90) days of its receipt of such written demand either publish the Work or revert to the Author in writing all rights to the Work granted to the Publisher herein, subject to any outstanding licenses which shall be assigned to the Author, and the Author shall retain any advance payments made hereunder prior to such reversion as liquidated damages for the Publisher's failure to publish the Work.

23. Out-of-Print

If, after the expiration of three years from the date of Publisher's first publication of the Work, the Work is out-of-print, the Author may make written demand to Publisher to reissue or license rights in the Work. Publisher shall notify the Author in writing within sixty (60) days after its receipt of a demand whether it intends to comply. If Publisher does not respond or if, within six (6) months of its notice that it intends to comply, Publisher has not complied by reissuing a full-length, English language edition of the Work in the United States or entering into a sublicense for such an edition, then this Agreement shall terminate and all rights granted to Publisher shall revert to Author.

Upon termination, the Author shall have the right for thirty (30) days to purchase the plates or film, if any, at one-fourth (1/4) of the cost (including typesetting). For the purposes of this paragraph, the Work shall be considered out-of-print (a) if it is not available for sale in the United States in a full-length English language edition in any format granted to Publisher under this Agreement that has generated sales of at least 100 units in the aggregate in the two (2) consecutive accounting periods immediately preceding the Author's request for reversion of rights; (b) if the Work does not appear on Publisher's "reorder" form or such other listing of



TradPublishingAgreement 01182013

available titles; and (c) if a contract for publication in a full-length English language print edition in the United States by a sublicensee of Publisher for Publication within twelve (12) months is not outstanding.

24. Miscellaneous Provisions

Notices. Any notice given under this Agreement is deemed to have been given if deposited in the United States mail, certified postage pre-paid, addressed to either party at the locations given above, or any other addresses as hereafter provided by either party.

Governing Law. Regardless of the place of its actual execution and performance, this Agreement shall be treated as though executed within the State of Florida and shall be governed by Florida laws. Any action or proceeding regarding this Agreement or the Work shall be brought solely in the Florida courts (state or federal) in Orlando, Florida.

Severability. If any provision of this Agreement or the application thereof to any person or circumstance will be held by a court to be unenforceable to any extend, the remaining provisions, and this Agreement and the application thereof, will not be affected and will be valid, legal, and enforceable to the fullest extent permitted by law.

Waiver. No waiver of any breach of, or default under, any provision of this Agreement will be deemed a waiver of such provision, or of any subsequent breach or default.

Assignment. This Agreement will be binding upon and inure to the benefit of the successors and assigns of the parties. The written consent of the Publisher must be secured before the Author may assign this Agreement in whole or in part.

Modifications and Amendments. This Agreement may not be modified or amended except by the written agreement of the parties.

The Authorship credit shall be "By Karyn Schoenbart with Alexandra Levit."

No advertising may be inserted into the Work without the prior written approval of the Author.

If the Publisher fails to render accountings or payments when due hereunder or commits any other material breach of this Agreement, including, but not limited, to any breach of Paragraph 5 of this Agreement, and if the Publisher fails to render such accountings or payments or to cure any such breach within 30 days after receipt of written notice by Author of such failure and/or breach, the Author may terminate this Agreement by giving written notice to the Publisher without waiving any of the rights it may have against the Publisher.

Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the matters covered by it, and supersedes any prior understanding or agreements, oral or written, with respect thereto. The parties will not be bound by any understanding, agreement, promise, or representation, whether expressed or implied, which is not specified in

Initials _____

Initials _KS_

TradPublishingAgreement 01182013

this Agreement. The Author hereby acknowledges and agrees that it has received a copy of and has fully reviewed and understands this agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed and delivered as of the Effective Date.

MOTIVATIONAL PRESS, INC.                AUTHOR

                                        SPORKSQUARED, LLC

Signature: _____
Name:  Justin Sachs                     By: _____
Title:  President and CEO               Name: _Karyn Schoenbart Sporkin_
Phone:  888.357.4441
Fax:  949.272.3789                      Title: _____Member_____
Email:  justin@motivationalpress.com
                                        Date: ___7/5/16___

                                        Tax ID: __795633911__

**Schedule A: Marketing and Promotion Addendum**

The Publisher provides the following marketing and promotional opportunities to its authors via its Authorship System. The Author may participate in as many of the below marketing initiatives as they deem appropriate.

- Promotion to Foreign Rights Agents Abroad
- Promotion to Book Reviewers
- Promotion to Libraries, Independent bookstores, catalogs, and other marketing initiatives
- Feature in the MP Speakers Kit and Media Catalog
- Promotion to and introductions to our contacts in the media
- Joint Venture Campaigns with other authors to ignite higher levels of promotion
- Based on Availability: Invitation to Speak at our Virtual Summits (topic based) in which we get 200+ attendees to watch/listen live to the speakers
- MP Social Media Campaigns
- Coordination of your Amazon, Audible and other Promotional Retail-level Campaigns
- Features on the MP Site
- 3+ Press Releases
- Behind The Scenes Author page on MP Site
- Article Distribution to MP Site or other high traffic online media
- Design Sales Webpage or Opt-In Page
- Non-Profit Partnership Proposal Support and Guidance

Expert Media Relations is responsible for pushing Author to the media, corporate bulk buyers and book reviewers. They do this through catalogs we feature our books in, press releases, media connections, and email pitches.

## **PLEASE READ THIS ENTIRE LETTER – IT EFFECTS YOU**

To all of you who participated in last month's survey or are still planning to – **THANK YOU!**

If you have not yet completed the survey, please take a few minutes and follow this link.  We are listening and making changes to further empower you: CLICK HERE TO TAKE THE SURVEY

### **SUMMARY:**

The Assets of Motivational Press Have Been Acquired We (see below) are very excited to announce that we have purchased the interests of Motivational Press.  This acquisition was completed in order to deliver top-shelf quality service to our authors.  We bring with it an established relationship with a $60 million distribution partner to help deliver your work to the world.

Justin Sachs is no longer a part of Motivational Press.  Please refer all future inquires to tony@motivationalpress.com.  We stand committed to provide you the full service you expected when you selected your publisher.

### **Who We Are:**

We are Authors Place Press. We are **a full-service, publisher and platform development agency**.  Our mission and vision are to honor God by creating a conduit through which your voice can impact the world by providing hope and prosperity to future generations.  Our primary values are Service, Authenticity, Family,Activation and Social Benefit.

You will not find much on the web about us yet as this is a new consortium full of relevant experience; that said, there will be a new brand released, new website, new author services tools and much more.

You can find out more about the partners below. Please use the link at the bottom to schedule a call with Tony.  After that, you will have his direct phone number.  We'd put it here but we can't have all 400 of you calling at the same time:

**Tony Ferraro:**  Tony is the strategist and visionary.  He is passionate about activating you toward your goals.

Click Here For:  Tony's Website

Click Here for:  Tony's LinkedIn Profile

Exhibit B

**Steve Lavey:** Steve is an operations genius that gets everything done. He will be working to ensure that everything related to process, finance and operations are all functioning in a way that best serves you, our primary customer.

Click Here For:  [Steve's LinkedIn Profile](#)

## How Does It Affect You:

Things only get better from here.  We bring proven success in new media marketing, social media, operations, brand development and strategy.  Your agreements remain as is; however, you will begin to see greater transparency in reporting, consistency in follow through and stronger resources to help you accomplish your goals.

Please take the time to fill out the following form.  Unfortunately, Justin did not leave us your contact information or very much other information, beyond email.  **<mark>PLEASE FILL OUT THE FOLLOWING:</mark>**

[CLICK FOR FORM](#)

## What To Look For:

In the coming weeks, we will be sending email notifications to keep you informed regarding new programs and resources that will be available to you.  These will include things like better social networking campaign support, launch strategy development, an authors membership team and more.  Additionally, we will be converting our website and branding.

## What To Do Now:

Please click the following link and schedule an introduction call with Tony Ferraro, Managing Director, if you have not already:

[CLICK HERE FOR TONY'S SCHEDULE](#)

We are excited to welcome you to our family and look forward to connecting soon.

Sincerely,

Tony & Steve!

This email was sent by [tony@motivationalpress.com](mailto:tony@motivationalpress.com) to [yetunde@yetundehofmann.com](mailto:yetunde@yetundehofmann.com)
Not Interested [Unsubscribe](#) | [Update profile](#)
Motivational Press | 7668 El Camino Real, 104-223 | Carlsbad, CA 92009

